STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
WILLIE LEAKS, PLAINTIFF IN ERROR.

Argued October 15, 1940—Decided January 28, 1941.

For the appellant, *Joseph Narrow.*

For the respondent, *William A. W. Grier.*

The opinion of the court was delivered by

BODINE, J. The defendant was twice convicted of first degree murder, the jury making no recommendation of life imprisonment. *N. J. S. A.* 2:138-4. The first conviction was set aside by a divided court. *State* v. *Leaks,* 124 *N. J. L.* 261. The defendant was born twenty years ago in Georgia and had gone through four years of schooling. His statement of his crime is as follows: "I went to Mr. Howard Meade's farm. I saw him coming from the barn with two buckets and he went in the house and came out at the time I was walking in his driveway. I says to him, 'good morning,' and I asked him where was a place around that I could get a job and he told me there was a farm down the road on the left by the name of Garrison. He said, 'you might can get a job there,' and I asked him for a drink of water and he told me to come in and he pumped the water and gave it to me. When I drank the water, I gave him the cup back. He made a lefthand turn and I hit him with my fist and he fell down and then he got up and tried to go outdoors. I grabbed him and I hit him again. Then he laid down and then he went to groaning, and he tried to get up again and then I hit him with a piece of wood and then I went and looked for the money, then I found $12.02 and I left."

The verdict seems proper in view of the foregoing testimony. *N. J. S. A.* 2:138-2. The assignments of error argued are two in number: The first, because the court said in its charge: "He killed a man or inflicted a blow from which the man later died, after the man had given him a drink of water." In view of the defendant's statement, this portion of the charge seems to have been well within the province of the trial court.

The next assignment is with regard to that which the trial judge said respecting the jury's right to recommend life imprisonment. *N. J. S. A.* 2:138-4. It seems perfectly clear from the entire charge that the question of recommendation of life imprisonment was left to the unrestricted discretion of the jury. *State* v. *Martin,* 92 *N. J. L.* 436. The trial judge said in part: "If you are satisfied from all the evidence that Willie Leaks is guilty of murder in the first degree then the legislature has permitted you to recommend not that the defendant be put to death; that is not the purpose nor the language of the act. But on the contrary the legislature has given you the right to say to the court that life imprisonment shall be inflicted upon this defendant as punishment. It is not that you are inflicting the punishment, but you have the right to say to the court that you recommend that this man be imprisoned at hard labor for life, and when you make that recommendation then the court can impose no greater punishment. However, if you do not make that recommendation then the burden is cast upon the court; not upon you."

The argument seems to be that the court thereby precluded the jury from exercising their discretion and may have led them to believe that they were not responsible for the defendant's life. This is not a fair reading of the court's charge. The jury must clearly have understood that they exercised the discretion. Nor can it be seen how they could have misunderstood their duty in the premises. Obviously, those charged with the enforcement of the law are not responsible for the outcome so long as they perform their duty.

The judgment is affirmed.

BROGAN, CHIEF JUSTICE. (Dissenting.) In a case as important as this it seems fitting that those who voted against the majority opinion should state the reason therefor.

Our difficulty arises out of the charge of the court to the jury. Among other things, in the charge to the jury, the learned trial judge said:

"I know that there is in your minds some question. You have read in the papers undoubtedly as to whether life imprisonment is life imprisonment and whether there is anything that can come after this court, so far as either of where the death penalty is imposed or the sentence of life imprisonment is imposed, and I feel constrained to read to you a part of the charge in a recent case that has been approved by the Court of Errors and Appeals. The court said: 'The court charges you in respect to that, referring to the matter of the powers of the Court of Pardons, that there is a Court of Pardons constitutionally constituted. I mean by that, provided for by our constitution. The Court of Pardons has power to modify, change, reduce, abolish or set aside whatever result a jury may arrive at, whether they fix a penalty of death or life imprisonment. It is the power resident in that court to do that regardless of the penalty and that court is constitutionally established.' That is the law of the State of New Jersey in regard to the Court of Pardons, so that no matter what sentence I may impose as the court upon this defendant the power resides in the Court of Pardons to do just what I have read. They have the right to modify, change, reduce, abolish or set it aside entirely. This is one of the provisions of our constitution. That is the power of the court to do that."

It is argued that this was error in that it was prejudicial to the defendant whereby he suffered "manifest wrong or injury."

It is true that reference to the plenary powers of the Court of Pardons was *approved* by this court as far back as the year 1916 in the case of *State* v. *Rombolo, 89 N. J. L.* 565, 570. The legislature had recently passed an amendment to the Crimes act permitting the jury, in the case of persons

convicted of murder in the first degree, to recommend life imprisonment at hard labor. The trial judge in the Rombolo case so instructed the jury, but the jury, after retiring to consider its verdict, returned into court and asked the judge whether a person found guilty of murder in the first degree "with recommendation" might thereafter be pardoned. The court told the jury that such person might be pardoned. On appeal the conviction was reversed, not for error in the charge but for illegal selection of the jury. The fact that the trial court told the jury about the powers of the Court of Pardons was urged as error and on this phase of the appeal this court, in the opinion, said it thought it advisable to "express our opinion concerning it." The court said: "We see no reason why they (the jury) should not be informed of the power of the Court of Pardons if they so desire, and, as a necessary consequence, we see no impropriety in the trial court, either at the request of the jury, or without such request, apprising that body with relation to the power of supervision possessed by the pardoning tribunal." Later we have the case of *State* v. *Carrigan*, 93 *Id*. 268, wherein writ of error was allowed to review a conviction of murder in the first degree. The writ and the proceeding were returned to our Supreme Court. In that case the trial judge, in charging the jury, referred to the fact that regardless of the jury's verdict in recommending life imprisonment the defendant might be paroled or pardoned subsequently by the Court of Pardons. This statement was assigned for error. The Supreme Court determined that the question was settled against the contention of the plaintiff in error by the decision in the Rombolo case, *supra*, and in the opinion deciding the Carrigan appeal, *supra*, the court quoted from what had been written in the Rombolo case, as follows: "We see no reason why they (the jury) should not be informed  *  *  *  with relation to the power of supervision possessed by the pardoning tribunal." The phrase from the complete sentence in the Rombolo case "either at the request of the jury or without such request" is omitted. The Court of Appeals affirmed the judgment (94 *Id*. 566) by a divided court. In the Rombolo case the trial judge

instructed the jury about the powers of the Court of Pardons, in response to a question from the jury; in the Carrigan case, as in the instant case, it was part of the court's own prepared charge. It seems to us that the sole duty of the jury is to determine the guilt or innocence of the accused and if he be found guilty then it is discretionary with the jury to say whether they recommend imprisonment for life. *State* v. *Martin*, 92 *N. J. L.* 436, 440. The jury has nothing whatever to do with whether the convicted person may appeal or may seek clemency in other courts. Nothing should be thrust into a jury's deliberations that could make them less careful in the determination of the issue entrusted to their conscientious judgment.

We can conceive of no more solemn duty committed to a jury than that of passing upon the life or liberty of a human being. The fundamental law does its best to put strong safeguards around the individual. Our law and that of the nation generally might be said to be beneficent in this respect. But it is the law. The jury must be satisfied of the guilt of the accused beyond a reasonable doubt; there is a presumption that the accused is innocent until the jury by verdict has determined to the contrary; preponderance of evidence is not the norm for determining guilt but freedom from reasonable doubt. Any suggestion that there are other tribunals for review or pardon, tends, we think, to weaken the jury's sense of appreciation of and responsibility for the duty confronting them. Their deliberation should be concerned with the evidence on the fact issue and an impartial, detached consideration thereof. Nothing should be obtruded that suggests to a jury that their finding is not so final and serious as it seems to be.

Less than two months ago the New York Court of Appeals unanimously reversed a first degree murder conviction because the district attorney, in examining prospective jurors, stated to them that if a first degree murder conviction resulted, the law required an appeal to be taken to the Court of Appeals and if there was an affirmance the defendant might appeal to the governor for clemency. *People* v. *Johnson*, 104 *N. Y.*

*L. J., No.* 146. The instant case is identical in principle but stronger in practical effect.

Mr. Justice Heher and Judges WolfsKeil and Hague are in accord with these views as expressing their reason for their vote to reverse the judgment.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, BODINE, DONGES, PERSKIE, PORTER, DEAR, WELLS, RAFFERTY, JJ. 10.

*For reversal*—THE CHIEF JUSTICE, HEHER, WOLFSKEIL, HAGUE, JJ. 4.